UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ERICK MIKITEN,<br><br>      Plaintiff,<br><br>v.<br><br>300 WEST 22 REALTY LLC; ICON REALTY MANAGEMENT, LLC.<br><br>      Defendants. | Case No 1:22-cv-10532 |

**COMPLAINT**
(Injunctive Relief Demanded)

Plaintiff Erick Mikiten for its Complaint against defendants 300 West 22 Realty LLC and ICON Realty Management, LLC ("Defendants") alleges as follows:

**INTRODUCTION**

1. This is a civil rights action for discrimination based on disability. More particularly, this lawsuit challenges Defendants' failure to provide accessible facilities, at The Moore, a hotel located at 300 West 22nd Street, New York, NY (the "Hotel").

2. Plaintiff Erick Mikiten ("Plaintiff" or "Mr. Mikiten") is physically disabled. He requires use of mobility aids, including a wheelchair. He stayed at The Moore from March 21 to March 24, 2022.

3. Defendants denied Plaintiff accessible facilities at the Hotel.

4. This complaint seeks declaratory and injunctive relief to require Defendants remove the architectural and policy barriers at the Hotel so that Plaintiff and similarly situated disabled individuals can achieve equal access to the goods and service provided at the Hotel.

5. Plaintiff was denied his rights to full and equal access at the Hotel, and he was denied his civil rights under both New York law and federal law. He continues to have his rights denied because these facilities were not, and are not now, properly accessible to physically disabled persons, including those who use wheelchairs.

6. Plaintiff seeks injunctive relief to require Defendants to provide persons with mobility impairments with the accessibility features required under federal and state laws. Plaintiff also seeks recovery of damages for his discriminatory experiences and denial of access and of civil rights, which denial is continuing as a result of Defendants' failure to provide disabled accessible facilities.

## JURISDICTION AND VENUE

7. This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 for violations of federal law. It also has jurisdiction pursuant to diversity under 28 U.S.C. § 1332 because the value of the equitable relief and remediations required under the ADA plus additional state law damages and attorney fees combined in this action exceed $75,000, and the Parties are residents of different states.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b). The real property which is the subject of this action is located in this district and that Plaintiff's causes of action arose in this district.

## PARTIES

9. Plaintiff is a qualified physically disabled person. He has been diagnosed with osteogenesis imperfecta, also known as brittle bones disease. His disability affects his ability to ambulate and creates a very serious risk of injury should he fall. Although Plaintiff is able to walk a few steps, he requires use of a manual wheelchair for transportation. Plaintiff also has severe hearing loss. Plaintiff resides in California, but he has family in New York City and travels to the area to visit them. He is currently working on an extended project in New York City which will require him to

travel there regularly. Plaintiff is unable to use portions of public facilities that are not accessible to mobility disabled persons, including those who require the use of a wheelchair, walking sticks, and/or cane.

10. At all times relevant to this complaint, Defendants were and are the owners, operators, lessors and/or lessees of the subject business, property and buildings located at 300 West 22nd Street, New York, NY. Plaintiff is informed and believes Defendants performed all acts and omissions stated herein which proximately caused the damages complained. Plaintiff is informed and believes that each of the Defendants herein is the agent, employee, or representative of each of the other Defendant, and each performed all acts and omissions stated herein within the scope of such agency or employment or representative capacity and is responsible in some manner for the acts and omissions of the other Defendants in proximately causing the damages complained of herein.

## FACTS

11. On March 19, 2022, Plaintiff made a reservation at the Hotel for an "Accessible queen room with sit in tub shower" for the nights of March 21, 2022, through March 24, 2022. Plaintiff was going to New York to work on a new project for work, and the Hotel was located very near the office where he would be attending meetings and working during his stay.

12. On March 21, 2022, Plaintiff flew from the Bay Area in California to New York City. His son accompanied him on the trip. Plaintiff and his son arrived at the Hotel on the evening of March 21st. They were both tired after a long day of traveling.

13. Upon arriving at the Hotel, the employees at the reception desk were helping other hotel guests, so Plaintiff and his son looked around for a place to wait in the lobby. Plaintiff saw that there was a small bar in the lobby where he thought he might get something to drink while he waited. However, the bar was too high for Plaintiff to sit at, and he did not see a lowered section of the bar at

an accessible height. Plaintiff had to find a different place in the lobby to wait.

14. When a Hotel employee became available to assist him, Plaintiff approached the reception desk in the lobby in his wheelchair to check in. He immediately noticed that the check in desk was too high and that there was no lowered section of the counter where he could transact his business. The height of the counter made checking in more difficult for Plaintiff because he is lower to the ground when sitting in his wheelchair than a person who is standing. The height of the counter made it difficult from him to exchange papers and credit cards with the employee behind the desk and to sign the check in paperwork. Plaintiff also had difficulty hearing the employee, and the height of the counter made it so that Plaintiff was unable to lean towards the employee to hear better.

15. Plaintiff was able, with difficulty, to complete the check-in process. He received the keys to the room, and he took the elevator up to the 5th floor where his room was located.

16. When Plaintiff entered the room, room number 507, he thought that the Hotel had mistakenly assigned him. The room appeared to him to be a standard hotel room rather than a designated accessible room. Plaintiff immediately saw that there was insufficient clear floor space on either side of the bed to allow him to pull his wheelchair alongside the bed to transfer from the chair to the bed. The only way for him to access the bed would be to pull his chair to the foot of the bed, transfer to the bed, and then somehow crawl to the head of the bed. Plaintiff also saw that in order to enter the restroom, he would have to traverse a 2-inch step. With difficulty, he was able to get up the 2-inch step with his wheelchair, but there was no way to turn around and close the door while facing out through the doorway while on the raised floor of the bathroom. The restroom tub lacked a fixed seat in violation of ADA regulations.

17. The following are true and correct photos of the restroom step (Plaintiff's son is shown in one of the photos):





18. Plaintiff went back down to the lobby to see if he could be reassigned to a room with

mobility accessible features as he had reserved. Plaintiff spoke with the manager of the Hotel, and he explained that the room he was assigned to was not accessible. He explained that he had reserved an accessible room and requested that he be reassigned an accessible room like he had reserved. The manager confirmed Plaintiff's reservation was for an accessible room, and the room he had visited was a designated accessible room. Wondering if the designation as "accessible" was incorrect, she offered to show Plaintiff the other designated accessible rooms which were not occupied.

19. The manager then showed Plaintiff three other rooms that she believed were mobility accessible rooms at the Hotel. All of the other rooms were also inaccessible to Plaintiff. These rooms all had a step up into the restroom like the first. Some had an additional step up into a shower. All restrooms lacked enough room to turn around.

20. The manager then offered to try to find Plaintiff another hotel with an accessible room for him to move to. However, this option was not acceptable to Plaintiff. He had extensively researched the neighborhood hotels with accessible rooms available only a few days prior, and he knew that this was the only hotel with available accessible rooms within walking distance to the office where he would be working. Additionally, by this time it was quite late. Plaintiff was tired and hungry, and he had an early meeting the following day. The idea of waiting for her to find another hotel, getting a taxi, and potentially having to pay more for a room was too exhausting to consider.

21. Plaintiff returned to the room he was originally assigned, settled in a bit, and then went out for dinner. Plaintiff then returned to the Hotel to prepare for his work the following day and sleep.

22. Plaintiff continued to discover and encounter many other barriers to access in his assigned "accessible" room and at the Hotel generally over the next few days of his stay. The inaccessible features of the room and the Hotel generally made Plaintiff's stay difficult, uncomfortable and unpleasant.

23. In the sleeping area of the Hotel room, Plaintiff continued to have difficulty getting in and out of the bed due to the lack of clear floor space on either side of the bed. He also was unable to reach the telephone to make or receive calls. The coat hooks outside of the closet and rod for hanging clothes in the closet were out of reach, so he was unable to independently hang or retrieve any of his clothes. Further, the lack of any luggage rack in the room meant that he had to store his suitcase on the floor making it impossible to navigate the room in his wheelchair. Exiting the room was also difficult for Plaintiff due to the lack of strike edge clearance at the door.

24. The bathroom was very difficult and dangerous for Plaintiff to use independently. The 2" step to get into the restroom made it so that Plaintiff had to use wheelchair to enter and exit the restroom. He would have been at significant risk of tripping and falling if he had tried to climb the step without his wheelchair. However, the restroom was not equipped to be used while in a wheelchair. Once inside the restroom in his wheelchair, Plaintiff was unable to close the door behind him. This lack of privacy was embarrassing and difficult for Plaintiff since he was sharing the room with his son.

25. Once inside the restroom, it was difficult for Plaintiff to transfer from his wheelchair to the toilet due to the lack of side transfer space at the toilet. He also had difficulty reaching the toilet paper dispenser and the flush valve for the toilet which were both located behind and above the toilet. The controls for the sink were also out of reach range from Plaintiff and the pipes under the sink were not appropriately insulated to protect Plaintiff's legs against burns as hot water ran through the pipes. The mirror was also not at a compliant height and thus useless to Plaintiff when sitting in his wheelchair.

26. Bathing was also very difficult for Plaintiff in the designated room. When he arrived, there was no fixed seat in the bathtub, so he was forced to ask the Hotel for a seat and wait for it to be

brought to his room before he could use the tub/shower. However, the seat the Hotel brought to Plaintiff had to be installed by clamping it onto the edge of the bathtub. Hotel staff delivered the seat while Plaintiff's son was in the bathroom, so to avoid further embarrassing coordination of staff in the room, Plaintiff had them leave the seat and Plaintiff installed it himself. The experience was inconvenient, embarrassing, and degrading.

27. Plaintiff also found that other areas of the Hotel were inaccessible to him during his stay. On the morning of March 22, 2022, Plaintiff found that the hallway between his room and the elevator was blocked by a cart that the housekeeping staff used for cleaning the rooms or providing extra towels for guests. The narrow hallway and size of the cart made it so that Plaintiff was unable to pass by the cart to get to the elevator in his wheelchair. He had to find someone to move the cart for him to pass by which delayed his departure from the Hotel. He asked the Hotel staff at the desk not to leave the cart in the hallway between his room and the elevator, but the cart was parked in the same place each day of his stay despite his request.

28. The Hotel also has a rooftop bar which Plaintiff tried to access to see the view, but it is not accessible to wheelchair users. The ramp leading to the rooftop space does not have compliant handrails or a level landing at the top of the ramp run. There is also a small step at the top of the ramp that he would have to traverse to get to the rooftop bar. During his stay, Plaintiff received assistance to get into the rooftop bar area, but he should have been able to access the area on his own unassisted. As a unique feature of the Hotel, Plaintiff would like to access the rooftop bar during future visits.

29. The inaccessible features of the hotel room and the Hotel itself made it a difficult and unpleasant place for Plaintiff to relax after his busy and stressful days at work.

30. Plaintiff works with several clients and has family in New York City. The Hotel is a very convenient place for him to stay while he is New York because it is located within walking

distance to the office where he works. Plaintiff would like to return to stay at the Hotel, but he is unable to do so until Defendants provide fully compliant accessible rooms and other accessible facilities at the Hotel.

31. None of this experience should have happened. Building records show that the Hotel was renovated in 2002 to provide accessible restrooms, which it failed to do. It was renovated again in 2007, 2008, 2011, and 2014, and a massive renovation of all Hotel's rooms between the second and fifth floors and the penthouse was also completed. Any number of these renovations should have required accessible rooms, restrooms, and common areas be provided, but they were not.

32. The above referenced barriers to access are listed without prejudice to Plaintiff citing additional barriers to access that Plaintiff could encounter on future visits to the Hotel by an amended complaint after inspection by Plaintiff's access consultant. All of these barriers to access render the premises inaccessible to physically disabled persons who are mobility impaired, such as Plaintiff, and are barriers Plaintiff may encounter when he returns to the premises. All facilities must be brought into compliance with all applicable federal and state code requirements, according to proof.

## FIRST CAUSE OF ACTION

### VIOLATION OF TITLE III OF THE ADA
**[42 U.S.C. §§ 12101, *et seq.*]**

33. Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all paragraphs of Complaint and incorporates them herein as if separately repled.

34. Plaintiff was at all times relevant herein a qualified individual with a disability for all purposes under the ADA.

35. Plaintiff has reasonable grounds for believing he will be subjected to discrimination each time he may attempt to use the subject property and premises, considering Defendants' policies

and physical premises barriers.

36. Plaintiff would like to stay at the Hotel in the future but is deterred from booking there because of its inaccessibility.

37. The subject property and facility operated by Defendants is one of the "private entities" which are considered "public accommodations" for purposes of Title III of the ADA, which includes any "inn, hotel, motel, or other place of lodging," 42 U.S.C. § 12181(7)(A), and any "restaurant, bar, or other establishment serving food or drink," 42 U.S.C. § 12181(7)(B).

38. The acts and omissions of Defendants set forth herein were in violation of Plaintiff's rights under the ADA and the regulations promulgated thereunder, 28 C.F.R. Part 36 *et seq*.

39. The removal of each of the physical and policy barriers complained of by Plaintiff as hereinabove alleged, were at all times herein mentioned "readily achievable" under the standards of sections 12181 and 12182 of the ADA. As noted throughout this Complaint, removal of each and every one of the architectural and/or policy barriers complained of herein was already required under New York State law.

40. On information and belief, the subject areas of the Hotel were modified after January 26, 1993. Any alterations, structural repairs, or additions since January 26, 1993, have independently triggered requirements for removal of barriers to access for disabled persons per section 12183 of the ADA.

41. Defendants have discriminated against Plaintiff in violation of Title III of the ADA by: (a) providing benefits that are unequal to that afforded to people without disabilities by not providing an accessible guest room and other accessible features; (b) failing to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford (and would not fundamentally alter the nature of) the goods, services, facilities, privileges, advantages, or

accommodations to individuals with disabilities; (c) failing to take steps as may be necessary to ensure that no individual with a disability is excluded, denied service, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services; (d) failing to remove architectural barriers that are structural in nature in existing facilities where such removal is readily achievable; and (e) where Defendant can demonstrate the removal of architectural barriers is not readily achievable, failing to make the goods, services, facilities, privileges, advantages, or accommodations available through alternative methods if such methods are readily achievable.

42. On information and belief, as of the date of Plaintiff's encounters at the premises and as of the filing of this Complaint, Defendants' actions, policies, and physical premises have denied and continue to deny full and equal access to Plaintiff and to other mobility disabled persons in other respects, which violate Plaintiff's right to full and equal access and which discriminate against Plaintiff on the basis of his disabilities and, thus wrongfully denying to Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations, in violation of 42 U.S.C. sections 12182 and 12183 of the ADA.

43. Defendants' actions continue to deny Plaintiff's rights to full and equal access by deterring Plaintiff from patronizing the Hotel and have discriminated and continue to discriminate against Plaintiff on the basis of his disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of Defendants' goods, services, facilities, privileges, advantages and accommodations, in violation of the ADA. 42 U.S.C. § 12182.

## SECOND CAUSE OF ACTION

**VIOLATION OF NEW YORK STATE HUMAN RIGHTS LAW**
**[N.Y. Executive law, Article 15 (Executive Law §§ 292 *et seq.*)]**

44. Plaintiff re-alleges and incorporates herein all previously alleged paragraphs of the Complaint.

45. The New York State Human Rights Law ("NYHRL") violations alleged herein are related to the same case and controversy forming the basis of the causes of action alleged pursuant to Federal Law.

46. The NYHRL makes it unlawful for an owner of a place of public accommodation to deny an individual with a disability, directly or indirectly, any of the advantages, facilities, or privileges of such a place of public accommodation. N.Y. Executive Law §296(2)(a).

47. Plaintiff is an individual with a disability within the meaning of N.Y. Executive Law § 292(21) because he is an individual with a physical impairment which substantially limits the normal bodily functions of walking and standing.

48. Discrimination under N.Y. Executive Law § 296 includes an owner's refusal to remove architectural barriers at existing places of public accommodation, or a refusal to take such steps necessary to ensure that an individual with a disability is not excluded or denied services at places of public accommodation because they use a mobility device. N.Y. Executive Law § 296(2)(c)(iii).

49. Defendants are subject to N.Y. Executive Law § 296 because the Hotel is a place of public accommodation as defined by New York State and Federal Law.

50. Defendants have failed to remove architectural barriers in their places of public accommodation.

51. Defendants have discriminated against Plaintiff and continue to discriminate against him and other individuals with similar disabilities by refusing to remove architectural barriers at the Hotel in violation of NYHRL.

52. Defendants' actions constitute willful intentional discrimination against Plaintiff on the basis of a disability in violation of the NYHRL, N.Y. Exc. Law § 296(2) in that Defendants have:

(a) constructed and maintained a Hotel that is inaccessible to mobility-disabled patrons, with knowledge of the discrimination; and/or (b) constructed and maintained a Hotel that is sufficiently intuitive and/or obvious that it is inaccessible to mobility disabled patrons; and/or (c) failed to take actions to correct these access barriers in the face of substantial harm and discrimination to mobility disabled patrons.

53. Defendants' discriminatory and unlawful conduct is ongoing, thus declaratory and injunctive relief against Defendants are appropriate pursuant to N.Y. Executive Law § 296, as well as 28 U.S.C. § 1367, Fed. R. Civ. P. 57, and 28 U.S.C. § 2201.

### THIRD CAUSE OF ACTION

**VIOLATION OF NEW YORK STATE CIVIL RIGHTS LAW**
**[NY CLS Civ R, Article 4 (CLS Civ R §§ 40 *et seq.*)]**

54. Plaintiff re-alleges and incorporates herein all previously alleged paragraphs of the Complaint.

55. The New York State Civil Rights Law ("NYCRL") violations alleged herein are related to the same case and controversy forming the basis of the causes of action alleged pursuant to Federal Law.

56. Contemporaneously with the filing of this Complaint, Plaintiff has served notice thereof upon the attorney general, in compliance with N.Y. Civil Rights Law § 40-d.

57. Plaintiff is a person entitled to the protections of N.Y. Civil Rights Law §§ 40, 40-c because all persons in the State of New York are entitled to the full and equal accommodations, advantages, facilities and privileges of any place of public accommodation, which includes any hotel. N.Y. Civil Rights Law § 40.

58. Plaintiff is an individual with a disability within the meaning of N.Y. Executive Law § 292(21), and hence covered by NYCRL, because he is an individual with a physical impairment

which substantially limits the normal bodily functions of walking and standing.

59. The Hotel is a public accommodation covered by NYCRL.

60. Defendants are subject to NYCRL because they own and/or operate the Hotel.

61. Defendants have directly or indirectly engaged in conduct that discriminates against Plaintiff and other individuals with disabilities in violation of NYCRL by owning and/or operating a hotel which does not provide full and equal privileges to people with disabilities who rely on devices for mobility.

62. Defendants have failed to take any prompt an equitable steps to remedy their discriminatory conduct and have refused to update or remove access barriers at the Hotel. These violations and Defendants' discriminatory and unlawful conduct is ongoing, thus declaratory and injunctive relief against Defendants is appropriate pursuant to N.Y. Executive Law §§ 40, 40-c, as well as 28 U.S.C. § 1367, Fed. R. Civ. P. 57, and 28 U.S.C. § 2201.

## **PRAYER FOR RELIEF**

Plaintiff has no adequate remedy at law to redress the wrongs suffered as set forth in this Complaint. Plaintiff has suffered and will continue to suffer irreparable injury as a result of the unlawful acts, omissions, policies, and practices of the Defendants as alleged herein, unless Plaintiff is granted the relief he requests. Plaintiff and Defendants have an actual controversy and opposing legal positions as to Defendants' violations of the laws of the United States and the State of New York. The need for relief is critical because the rights at issue are paramount under the laws of the United States and the State of New York.

WHEREFORE, Plaintiff prays for judgment and the following specific relief against Defendants:

1. Issue a declaratory judgment that Defendants' conduct has violated, and continues to

violate the ADA and accompanying regulations, as well as New York law.

  2. Issue a preliminary and permanent injunction directing Defendants as the current owner, operator, lessor, and/or lessee of the subject property and premises to modify the above-described property, premises, policies and related facilities to provide full and equal access to all persons, including persons with physical disabilities; issue a preliminary and permanent injunction pursuant to ADA and the regulations incorporated therein, and pursuant to state law and accompanying regulations, directing Defendants to provide facilities usable by Plaintiff and similarly situated persons with disabilities, and which provide full and equal access, as required by law, and to maintain such accessible facilities once they are provided; to cease any discriminatory policies; and to train Defendants' employees and agents in how to recognize disabled persons and accommodate their rights and needs;

  3. Retain jurisdiction over the Defendants until such time as the Court is satisfied that Defendants' unlawful policies, practices, acts and omissions, and maintenance of inaccessible public facilities and policies as complained of herein no longer occur, and cannot recur;

  4. Award to Plaintiff all appropriate damages, including but not limited to statutory damages, general damages, and treble damages in amounts within the jurisdiction of the Court, all according to proof;

  5. Award to Plaintiff attorney fees, litigation expenses, and costs of this proceeding;

  6. Award pre- and post-judgment interest as permitted by law; and

  7. Grant such other and further relief as this Court may deem just and proper.

Dated: December 13, 2022       PEIFFER WOLF CARR KANE CONWAY
                 & WISE, LLP


                   /s/ Jason J. Kane

Jason J. Kane, Esq.
Bar Roll No. 4561908

PEIFFER WOLF CAR KANE CONWAY & WISE, LLP
95 Allens Creek Road, Bldg. 1, Ste. 150
Rochester, NY 14618
Telephone: (585) 310-5140
Facsimile: (585) 397-3745
jkane@peifferwolf.com


PEIFFER WOLF CAR KANE CONWAY & WISE, LLP
Catherine Cabalo, Esq. (*pro hac vice* application forthcoming)
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Telephone: (415) 766-3592
Facsimile: (415) 402-0058
ccabalo@peifferwolf.com

REIN & CLEFTON, Attorneys at Law
AARON M. CLEFTON, Esq. (SBN 318680) (*pro hac vice* application forthcoming)
200 Lakeside Drive, Suite A
Oakland, CA 94612
Telephone: (510) 832-5001
Facsimile: (510) 832-4787
info@reincleftonlaw.com


## DEMAND FOR JURY TRIAL

Pursuant to Rule 36 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable.

Dated: December ___, 2022

PEIFFER WOLF CARR KANE CONWAY & WISE, LLP


    /s/
Jason J. Kane, Esq.
PEIFFER WOLF CAR KANE CONWAY & WISE, LLP
95 Allens Creek Road, Bldg. 1, Ste. 150
Rochester, NY 14618
Telephone: (585) 310-5140

Facsimile: (585) 397-3745
jkane@peifferwolf.com